IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| THOMAS NOON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 20-cv-06124-SRB |
| ) | |
| CITY OF PLATTE WOODS, ) | |
| MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **ORDER**

Before the Court is Defendant City of Platte Woods, Missouri ("Platte Woods"), Mayor John Smedley ("Smedley"), and Chief of Police James Kerns's ("Kerns") (collectively, "Defendants") Motion for Summary Judgment. (Doc. #64.) For the reasons set forth below, Defendants' motion is GRANTED, in that Plaintiffs' 42 U.S.C. § 1983 claim (Count III) is dismissed with prejudice. As for Plaintiffs' remaining state law claims (Counts I and II), the Court declines to exercise supplemental jurisdiction and accordingly remands this action to the Circuit Court of Platte County. The Clerk of Court is directed to mail a certified copy of this Order to the Clerk of the Circuit Court of Platte County, Missouri, as required by 28 U.S.C. § 1447(c).

### I. BACKGROUND

This lawsuit arises out of the termination of Plaintiff Thomas Noon ("Noon"), Christopher Skidmore ("Mr. Skidmore") and Candice Skidmore's ("Mrs. Skidmore") (collectively, "Plaintiffs") employment with the Platte Woods Police Department ("PWPD"). For the purpose of resolving the pending motion, the following facts are uncontroverted or

deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III.

Smedley is the Mayor of Platte Woods, a municipality within the state of Missouri. In 2017, Kerns became Chief of Police of the PWPD. In addition to serving as Chief of Police, Kerns owns and operates an accounting consulting business, drives for Lyft and Uber, and is a member of the Ararat Shriners organization.

Noon started working at the PWPD as a police officer in 1995. In 2017, after Kerns became Chief of Police, Noon was promoted to Deputy Chief. Noon was, in part, responsible for patrol, responding to calls, rotation of on-call officers, assisting and informing on-duty officers, and was the emergency management director for Platte Woods. Mr. Skidmore was first hired as a police officer for the PWPD in 2010 and was promoted to Sergeant in 2018. Mr. Skidmore was partially responsible for assigning shifts to other officers and vehicle maintenance. In November 2018, Mrs. Skidmore was hired as a police officer for the PWPD. She had patrol duties and served as one of the backup court clerks for Platte Woods. Mrs. Skidmore also reviewed PWPD officers' daily activity logs.

Over the course of their employment, Plaintiffs observed and voiced a number of concerns about the PWPD and Kerns's performance as Chief of Police. For example, Mrs. Skidmore observed that officers would not complete their daily police activity logs. She made complaints to her superiors about safety issues with PWPD vehicles, including missing airbags

---

[1] The Court notes that the applicable standard requires the facts to be viewed in the light most favorable to the non-moving party, Plaintiffs. The relevant facts are taken from the record, including the parties' briefs and exhibits. The parties' briefs contain voluminous facts which, for reasons explained below, are not germane to the Court's decision. Only those facts necessary to resolve the pending motion are discussed, and those facts are simplified to the extent possible.

and faulty emergency lights. Mrs. Skidmore was also concerned that various officers would return home while still on their shifts.

Mr. Skidmore brought to Kerns's attention that officers were required to operate poorly conditioned vehicles, officers failed to pursue investigations with the correct course of action, and that he believed the PWPD radar system provided false readings. Mr. Skidmore claims Kerns did not address these issues. Mr. Skidmore also complained about Kerns using PWPD time to conduct his personal business.

Mr. Skidmore and Mrs. Skidmore also had concerns about their fellow officer, William Babbitt ("Babbitt"). For instance, Mr. Skidmore did not believe Babbitt was fit to be a police officer, and complained that Kerns was assigning the majority of available shifts to Babbitt and not the other officers. Mrs. Skidmore also informed Noon that Babbitt allegedly made threatening comments on social media. Noon brought these concerns to Kerns's attention.

On September 9, 2019, frustrated with the PWPD's direction under Kerns, Noon asked Kerns to meet with him for coffee. During that meeting, Noon informed Kerns that he was displeased with Kerns's performance as Chief of Police, told Kerns he felt he was dishonest to Noon, encouraged Kerns to resign as Chief of Police, and handed Kerns a pre-drafted resignation letter for Kerns to sign. Kerns did not resign as Chief of Police. Later that day, Noon called Smedley and informed him about a number of issues he had with Kerns, including that Kerns worked on his private bookkeeping business while on duty.

On September 12, 2019, a "Complaint Packet" was sent to Smedley and the Platte Woods Board of Aldermen. Plaintiffs, as well as other officers, in varying degrees, contributed to the contents of the Complaint Packet. However, at the time of delivery, the Complaint Packet authors were anonymous. The Complaint Packet included a summarized list of officers' issues

3

with Kerns's ability to perform his duties as Chief of Police, which, according to the Complaint Packet, "led to chronic, systemic and significant issues within [PWPD]." (Doc. #65-6, p. 1.) The Complaint Packet also included a copy of the PWPD standard operating procedures which noted "over 180 violations," and included "a supplemental document with numerous other examples of specific public safety concerns or simply things that discourage officers." (Doc. #65-6, p. 2.)

On November 14, 2019, displeased with the lack of investigation into the Complaint Packet's allegations, Mr. Skidmore and Noon both sent letters to Smedley informing him that they were involved in creating the Complaint Packet. Sometime after raising concerns about PWPD vehicles and Babbitt, several of Mrs. Skidmore's job duties were taken away. In late November 2019, Mr. Skidmore's administrative rights were blocked and he was no longer able to assign shifts.

On December 4, 2019, a local newspaper wrote about the Complaint Packet and its various allegations. The parties do not know who leaked the Complaint Packet to the media. On December 6, 2019, Kerns learned that an anonymous email was sent to the Ararat Shrine which reiterated the contents of the Complaint Packet. Kerns reached out to Smedley and discussed that Noon or Mr. Skidmore may have been involved with leaking the document to the Ararat Shrine.

On January 7, 2020, Noon and Mr. Skidmore wrote another letter to Smedley. In that letter, they informed Smedley that they learned the investigation into their allegations was closed despite neither officer being interviewed. Mrs. Skidmore wrote a formal complaint on January 14, 2020, noting that when Mr. Skidmore and she went to work on January 13, 2020, they were

4

ignored by other officers. When Mrs. Skidmore went to work her regular shift, Babbitt took over her duties.

In January 2020, Plaintiffs were removed from the PWPD schedule, and their employment was formally terminated on March 1, 2020. Plaintiffs subsequently sued Defendants in the Circuit Court of Platte County, Missouri. The state court petition asserted claims against each defendant for retaliatory discharge under Missouri's Whistleblower Protection Act, Mo. Rev. Stat. § 285.575 ("Count I"), retaliatory discharge in violation of the Missouri's Worker's Compensation Act, Mo. Rev. Stat. § 287.010, et seq. ("Count II"), and First Amendment retaliation under 42 U.S.C. § 1983 ("Count III"). On August 19, 2020, Defendants removed this case to federal court under, asserting that the Court has federal question jurisdiction over Count III and supplemental jurisdiction over Count I and Count II.

On November 6, 2020, Plaintiffs filed an Amended Complaint which retained the same causes of action against Defendant as the original state court petition. Defendants now move for summary judgment on all counts. The Court addresses the arguments in the order discussed by the parties.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set

5

out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted).
If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.*

## III. DISCUSSION

### A. Count III – First Amendment Retaliation under 42 U.S.C. § 1983

Count III asserts a § 1983 claim against each defendant for retaliation under the First Amendment. Defendants argue, in part, that they are entitled to summary judgment on Count III because (1) Smedley and Kerns are only sued in their official capacity, and therefore the claims against them are duplicative of the claims against Platte Woods, and (2) Plaintiffs fail to present evidence demonstrating that their alleged First Amendment rights were violated as the result of an unconstitutional custom. As to the first point, Plaintiffs argue that they "have identified conduct of Kerns and Smedley that supports liability in their individual capacity." (Doc. #80, p. 52.) As to the second point, Plaintiffs argue that they have shown the existence of an unconstitutional custom. Both points are addressed in turn.

#### 1. Kerns and Smedley Are Entitled to Summary Judgment Because They Are Only Sued in Their Official Capacity, and Therefore the § 1983 Claims Against Them Are Redundant

Under 42 U.S.C. § 1983, "aggrieved plaintiffs may sue a state actor for violation of their constitutional rights." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). A "[p]ublic servant[ ] may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). "[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued

6

only in his or her official capacity." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (citations and quotation marks omitted).

Here, the Court agrees with Defendants that "[n]owhere in the Amended Complaint, do Plaintiffs 'expressly and unambiguously state' that Jim Kerns and John Smedley are being sued in their individual capacities." (Doc. #65, p. 25.) The word "capacity" does not even appear in the Amended Complaint, and nothing indicates that Kerns and Smedley are being sued individually. (Doc. #26.) The Amended Complaint's caption refers to Smedley and Kerns by their official titles, Mayor and Chief of Police, respectively. While Plaintiffs argue that they have identified conduct which supports Kerns's and Smedley's individual liability, "only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants." *Johnson*, 172 F.3d at 535. Because the Amended Complaint contains no such statement, the Court finds Plaintiffs have sued Kerns and Smedley under § 1983 in their official capacities only.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation and quotation marks omitted). An official-capacity suit should thus "be treated as a suit against the entity." *Id.* at 166. As a result, "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity" and should be dismissed "as redundant of the claim against" the governmental entity. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In turn, the Court dismisses Plaintiffs' § 1983 official capacity claims against Smedley and Kerns as redundant to Plaintiffs' § 1983 claim against Platte Woods.
7

## 2. Platte Woods Is Entitled to Summary Judgment on Count III Because Plaintiffs Have Not Presented Evidence of an Unconstitutional Custom

Because Smedley and Kerns are dismissed, the Court must determine whether Platte Woods is entitled to summary judgment. "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior." *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996) (citation and quotation marks omitted). "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an action pursuant to . . . misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law." *Ware v. Jackson Cty, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citation and quotation marks omitted).[2] A custom is demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Id.* (citation omitted, cleaned up).

Defendants argue that Plaintiffs do not provide evidence in support of a custom establishing municipal liability. Plaintiffs argue that they "have shown the official custom of PWPD through Kerns. For instance, he acted through a custom of not adequately repairing and maintaining vehicles, despite his role as the top of the chain of command." (Doc. #80, p. 53.)

---

[2] The Court notes that municipal liability can also be demonstrated pursuant to "an official municipal policy." *Ware*, 150 F.3d at 880. However, Plaintiffs' brief makes clear their theory of liability is by means of a custom, not an official policy. In turn, the Court need not address this theory of liability.

8

The Court finds Plaintiffs' argument fails for several reasons. First, the "custom" Plaintiffs argue exists is inadequately repairing and maintaining vehicles. This alleged custom does not implicate any constitutionally protected rights. Instead, Plaintiffs were required, but failed, to establish that Platte Woods had a custom of retaliating against the exercise of its employee's speech or other protected activity; that is, the custom must be the same as the action which "caused the constitutional injury at issue." *Andrews*, 98 F.3d at 1075. Thus, the "custom" that Plaintiffs rely on does not support a finding of Platte Woods's liability under § 1983.

Second, Plaintiffs also fail to produce evidence of a custom showing the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct. Plaintiffs at best have shown that multiple police officers tied to the production of the Complaint Packet were terminated. Even if that adverse employment act was in retaliation for exercising protected speech, Plaintiffs do not show prior instances in which Platte Woods retaliated against its employees for engaging in protected activity beyond the events giving rise to this lawsuit. *See, e.g., Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (granting summary judgment in favor of a municipality because "even if [the court is] to assume as true that there were shortcomings in the investigation in [the shooting of Plaintiff's son] . . . [Plaintiff] has offered no evidence that any previous investigations were inadequate, or that such investigations were a moving force in the deputies' actions"). Plaintiffs thus do not establish that their termination was a result of a custom so pervasive as to have the force of law.

In turn, Plaintiffs have not established municipal liability by way of an unconstitutional custom. Accordingly, Platte Woods is entitled to summary judgment on Plaintiffs' § 1983 claim. Count III is thus dismissed.

### B. Count I and Count II – Missouri State Law Claims

This Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because one of Plaintiffs' claims arose under federal law – specifically, Plaintiffs' 42 U.S.C. § 1983 claim. Given this Court's determination that Defendants are entitled to summary judgment on Plaintiffs' § 1983 claim, the issue arises of whether the Court continues to have supplemental jurisdiction over Plaintiffs' remaining state law claims.[3]

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). "Federal district courts should exercise judicial restraint and avoid state law issues wherever possible because state law claims are more properly heard by state courts." *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046, 1056 (E.D. Mo. 2005) (citations omitted).

---

[3] In Plaintiffs' Amended Complaint, Count I alleges that Defendants violated the Missouri Whistleblower Protection Act because Plaintiffs reported violations to their supervisors regarding Occupational Safety and Health Act ("OSH Act") violations. (Doc. #26, ¶¶ 72-73.) While the OSH Act is a federal statute, Plaintiffs' cause of action arises under Mo. Rev. Stat. § 285.575.2. "The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 812 (1986). Additionally, the only dispute regarding Count I appears to be whether Platte Woods is an "employer" and whether Plaintiffs engaged in protected activity as defined by Missouri law, not the interpretation of the OSH Act. Any federal issue in Count I is thus not "actually disputed and substantial[.]" *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfr.*, 545 U.S. 308, 314 (2005). The Court thus does not have federal question jurisdiction over Count I.

Here, the relevant factors weigh in favor of declining to exercise supplemental jurisdiction. Judicial economy and convenience do not heavily favor retaining jurisdiction since discovery produced in this case may be used in state court litigation. *See*, *e.g.*, *C & J Mgmt. Corp. v. Anderson*, 707 F. Supp. 2d 858, 864 (S.D. Iowa 2009) ("the Court d[id] not foresee a significant inconvenience to the parties if Plaintiffs refile[d] their state claims in state court since their work, to date, c[ould] be directly applied in a state court action."). This observation is particularly true given this case will be remanded to state court where it was initially filed. Regarding fairness, Plaintiffs and Defendants are "citizens" of Missouri. "Out of respect for the principles of federalism and for the courts of the State of [Missouri,]" the Court finds that a Missouri state court should resolve this dispute between citizens of Missouri and which involves the application of state law. *Graham v. Entergy Arkansas, Inc.*, 2011 WL 4963026, at *5 (E.D. Ark. Oct. 19, 2011).

"When declining to exercise supplemental jurisdiction under § 1367(c), the court can decide to dismiss the remaining claims without prejudice or remand those claims to state court." *Graham v. Hubbs Mach. & Mfg., Inc.*, 188 F. Supp. 3d 895, 907 (E.D. Mo. 2016) (citations omitted). This case was initiated in state court, and the remaining claims arise solely under state law. The Court declines to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims and will exercise its discretion to remand the case to the state court.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. #64) is GRANTED to the extent that Count III of Plaintiff's Amended Complaint is dismissed with prejudice.

It is **FURTHER ORDERED** that the Clerk of Court shall remand this action to the Circuit Court of Platte County, from which it was removed.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 18, 2021